MR. JUSTICE SHEEHY,
dissenting:
It is a matter of coincidence that I dictate this dissent on Sunday, November 11, 1984. This used to be called Armistice Day, and the television news is full of reports of a reunion of Viet Nam war veterans in Washington D.C. Coincident with their reunion is the dedication of a memorial statuary to Viet Nam war veterans, the seven-foot tall representation of three Viet Nam war servicemen who seem to be peering intently at an earlier Viet Nam war memorial on which is inscribed the names of more than 58,000 service *341 men who lost their lives in that war.
It was a war in which nothing was won and much was lost. A part of that loss, not recognized or admitted by the authorities at first, was the damaging effect to the cognitive abilities of some that served in the war. Only recently has there been positive acceptance that there does exist in some ex-servicemen a post-Viet Nam war traumatic syndrome.
Jerry Korell, the evidence is clear, is a victim of that syndrome. Before his term of service, he was a mentally functional citizen. After his return from service, he is mentally dysfunctional. We can measure our maturity about how we meet such problems by the fact that Jerry Korell now will inevitably spend a great part of his life in jail for his actions arising out of that dysfunction.
Jerry Korell’s dysfunction can be traced almost directly to the Viet Nam war. There are thousands of others whose mental aberrations have no such distinct origins. From genes, from force of environment, from physical trauma, or from countless other causes, their actions do not meet the norm. You know them well — the strange, the different, the weird ones.
Sometimes (not really often it should be said) these mentally aberrant persons commit a criminal act. If the criminal act is the product of mental aberration, and not of a straight-thinking cognitive direction, it would seem plausible that society should offer treatment, but if not treatment, at least not punishment. The State of Montana is not such a society.
I would hold that Montana’s treatment of the insanity defense is unconstitutional for at least two reasons: One, it deprives the insane defendant of due process by depriving him of a trial by jury for each element of the crime for which he is charged; and two, it invades the insane defendant’s right against self-incrimination.
In this dissent I use the terms “insanity” and “insane” in their universal sense. They include the broad spectrum of mental aberration from the maniacal to those deprived of *342 their reasoning processes by such vague forces as prolonged melancholia, depression, paranoia and the like. I use the terms in the sense of those persons who meet the American Law Institute formulation of insanity for criminal purposes:
“A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he lacks substantial capacity to appreciate the criminality of his conduct or to conform his conduct to the requirements of the law.” Model Penal Code, Section 4.01(1), proposed official draft(1962).
Before 1979, it was clear in Montana that persons suffering from a mental disease or defect were not responsible for their criminal conduct. Former Section 95-501, R.C.M. 1947, provided:
“(1) A person is not responsible for criminal conduct if at the time of such conduct as a result of mental disease or defect he is unable either to appreciate the criminality of his conduct or to conform his conduct with the requirements of law.”
“(2) As used in this chapter, the term ‘mental disease or defect’ does not include an abnormality manifested only by repeated criminal or other antisocial conduct.”
The provisions of former Section 95-501, R.C.M. 1947, reflected the American Law Institute position with respect to the insanity defense. The language found in subsection (2) of Section 95-501, R.C.M. 1947, was a caveat formed by the ALI to restrict the definition of mental disease or defect.
In 1979, the legislature acted to repeal and eliminate what was subdivision (1) of Section 95-501, R.C.M. 1947. What remains are only the provisions of present Section 46-14-101, MCA, which defines mental disease or defect in the same manner as subdivision (2) of former Section 95-501, supra.
Thus, the 1979 legislature removed any statutory direction that a person is not responsible for criminal conduct if at the time of the conduct, as a result of mental disease or defect, he was unable to appreciate the criminality of his *343 conduct or to conform his conduct to the requirements of law.
The 1979 legislature went further. While one may not use the defense of mental disease or defect unless within ten days of entering plea one files a written notice of a purpose to rely on such mental disease or defect to prove that one did not have a particular state of mind which is the essential element of the offense charged (Section 46-14-201, MCA), once one has filed such a notice, the court thereupon appoints a psychiatrist or requests the superintendent of the Montana State Hospital to designate a qualified psychiatrist to examine and report upon the mental condition of the defendant. Section 46-14-202, MCA.
Under Section 46-14-202(3), in the examination of the defendant any method may be employed which is accepted by the medical profession for the examination of those alleged to be suffering from mental disease or defect. Under Section 46-14-212, the psychiatrist is to be permitted to have reasonable access to the defendant for the purpose of the examination. Chemical injection, if accepted by the medical profession, is one of the methods that may be used in such an examination. There can be no question that, regardless of the method of the examination, the insane defendant’s right against self-incrimination is at once imperiled.
I would not, however, on the grounds of self-incrimination alone, hold the process unconstitutional. I recognize the necessity, in cases where insanity is pleaded as a defense, that the State have equal right to psychiatric testimony to the same extent that is enjoyed by the defendant. What is more serious constitutionally, however, is what our statutes provide with respect to the testimony at trial from the examining psychiatrist.
Section 46-14-213, MCA, provides that when the psychiatrist who has examined the defendant testifies, his testimony may include his opinion “as to the ability of the defendant to have a particular state of mind which is an element of the offense charged.” The statute takes away *344 from the psychiatrist, and from the jury, the previous test of whether the defendant lacked the capacity to appreciate the criminality of his conduct or his ability to conform his conduct to the requirements of the law. The statute instead places in the power of the psychiatrist, and takes from the jury, the determination of whether the defendant had the particular state of mind which is an element of the offense charged. Thus is the defendant deprived of his right of trial by jury as to every element of the crime charged against him. See, In Re Winship (1970), 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed. 2d. 368.
The elements of the crime of deliberate homicide in Montana are a voluntary act (Section 45-2-202, MCA), coupled with either purpose or knowledge (Section 45-5-102, MCA). Thus the jury must be instructed, even where the insanity is an issue, that if the defendant acted purposely, or with knowledge, he is guilty of the offense. The jury is then instructed that a person acts knowingly if, with respect to the conduct, he is aware of his conduct. Section 454-2-101(33), MCA.
The jury is also instructed that the defendant acts purposely if it is his conscious object to engage in that conduct or to cause that result. Section 45-2-101(58), MCA. No consideration is given by the jury as to whether the defendant lacks substantial capacity to appreciate the criminality of his conduct, or whether he is unable to conform his conduct to the requirements of the law. If the psychiatrist has testified that the defendant had the state of mind required as an element of the crime, that is, in the case of deliberate homicide, purpose or knowledge, the defendant is criminally guilty. The jury never gets to determine if the defendant acted by force of mental aberration.
» In a case under present Montana law, therefore, when the defendant relies on insanity to explain the crime of deliberate homicide, the jury is led to the inevitable conclusion by managed testimony that he is indeed guilty of the crime.
Montana’s statutory scheme seeks to ameliorate the man *345 aged conviction of the insane defendant by providing that at his sentencing, he having been convicted of a criminal act, the sentencing judge may take into consideration his insanity! At the sentencing, the judge, and not the jury, shall for the first time consider whether the defendant was suffering from a mental disease or defect which rendered him unable to appreciate the criminality of his conduct or to conform his conduct to the requirements of law. Section 46-14-311, -312, MCA.
For the reasons foregoing, I would hold the statutory scheme pertaining to insane defendants in Montana unconstitutional. I do not hold with the majority that there is no independent constitutional right to plead insanity. I consider that position the ultimate insanity. I would hold that he has an independent constitutional right to trial by jury of the fact of his ability to commit a crime by mental aberration.
For like reasons, I do not agree with the majority with respect to the rebuttal testimony offered by Cedric Hames. I would hold that reversible error occurred in that instance. Principally, I would so hold because the State learned that Korell had twice requested Hames to buy ammunition for him in the days before the shooting from his examination by the psychiatrists. The State used his psychiatric examination to help convict him.
I also emphatically disagree with the majority with respect to the necessity of the voluntary instruction.
Section 45-2-202, MCA, states that “a material element of every offense is a voluntary act . . .” The majority opinion seems to limit this statutory provision by determining that the statute reflects only physiological considerations, stating that those who act by reflex, or while sleepwalking, should not be held criminally responsible. That is too narrow an interpretation of “voluntary.” The word has its root in the Latin word for will, and any interpretation of it should include acts done through one’s will, choice or consent. A jury should be specifically instructed that a criminal *346 act requires one’s will, choice or consent.
Unfortunately, our criminal code does not define a “voluntary act.” It does define an “involuntary act” to include reflexes or convulsions, unconscious sleep movements, hypnosis and such. Section 45-2-101(31), MCA. The majority has changed the definition of an involuntary act to limit the scope of a voluntary act which, to me, is not the intent of the criminal code and is improperly restrictive.
I would reverse and remand for a new trial, and direct the District Court to instruct the jury on the ALI formulations respecting insanity as applied to criminal acts.
I suggest a retrial on the basis of the ALI formulations not because I consider those formulations the last word on the subject, but because we do have remaining in our statutes some recognition of the ALI formulations with respect to the insanity defense. Under present law the District court must look to the ALI formulations to determine the extent of the sentence to be imposed, Section 46-14-311, MCA. The real problem facing this Court is that the abolition by the legislature in 1979 of mental disease or defect as an exculpatory defense leaves a cavity in our criminal law that is the obligation of the legislature to fill. Unless we now recognize the ALI formulations on the basis that there is legislative recognition of their validity in the sentencing process, we have no legislation direction in the statutes for the insanity defense.
It is curious that Montana abolished the insanity defense in 1979, before the onset of the Hinckley trial. Hinckley’s attack on President Reagan, and the subsequent acquittal of Hinckley in June 1982, prompted a rash of enactments and proposals for enactments with respect to the insanity defense. The Standing Committee on Association Standards for Criminal Justice of the American Bar Association at the time of the Hinckley verdict had been considering mental health law and criminal justice issues for close to a year and a half. The Hinckley verdict triggered the Committee’s consideration of key issues in order to advise Con *347 gress, state legislatures and the public in the aftermath of the concern arising from the Hinckley verdict. At least part of the credit must be given to that Standing Committee for the fact that Congress has refused so far to abolish the insanity defense.
The Standing Committee on Association Standards has since promulgated its proposed criminal justice mental health standards for consideration by the Bar and by legislatures. It proposes that the insanity defense be considered as “the defense of mental nonresponsibility,” and further proposed that such a condition be exculpatory to a criminal charge. The Committee examined enactments such as Montana’s and in comment had this to say:
“This approach, which would permit evidence of mental condition on the requisite mental element of the crime but eliminate mental nonresponsibility as an independent, exculpatory doctrine, has been proposed in several bills in Congress, and adopted in Montana, Idaho and Utah. The ABA has rejected it out of hand. Such a jarring reversal of hundreds of years of moral and legal history would constitute an unfortunate and unwarranted overreaction to the Hinckley verdict.
“Yet the issue of criminal blameworthiness should require a deeper inquiry. Implicit in this concept is a certain quality of knowledge and intent, going beyond a minimal awareness and purposefulness. Otherwise, for example, a defendant who knowingly and intentionally kills his son under the psychotic delusion that he is the biblical Abraham and his son, the biblical Isaac, could be held criminally responsible. The Montana, Idaho and Utah enactments, on their face, would deny a defense to such a defendant.” American Bar Association, Standing Committee on Association Standards for Criminal Justice, Report to the House of Delegates, August, 1984, Standard 7-6.1, Commentary P.327.
Thus has Montana’s abolition of the insanity defense in 1979 been held up for criticism and disrespect by national *348 authorities and scholars. It behooves our legislature, which will be meeting in a few months, to reexamine its mental health laws as they pertain to criminal justice and to revamp the same. It could do nothing finer than to adopt the standard of exculpatory definition proposed by the Standing Committee on Association Standards of the American Bar Association which follows:
“Standard 7-6.1. The defense of mental nonresponsibility [insanity].
“(a) A person is not responsible for criminal conduct if, at the time of such conduct, and as a result of mental disease or defect, that person was unable to appreciate the wrongfulness of such conduct.
“(b) When used as a legal term in this standard ‘mental disease or defect’ refers to:
“(i) impairments of mind, whether enduring or transitory; or (ii) mental retardation either of which substantially affected the mental or emotional processes of the defendant at the time of the alleged offense.”
There are accompanying standards proposed by the Standing Committee which the legislature should also adopt, which would soften the aspects of self-incrimination which I have described above, and especially a proposed standard which would prevent the experts from invading the province of the jury. Particularly applicable, in my opinion, would be Standard 7-6.6:
“Standard 7-6.6. Limitation on opinion testimony concerning mental condition.
“Expert opinion testimony as to how the development, adaptation and functioning of the defendant’s mental processes may have influenced defendant’s conduct at the time of the offense charged should be admissible. Opinion testimony, whether expert or lay, as to whether or not the defendant was criminally responsible at the time of the offense charged should not be admissible.”
It is clear that the Standing Committee, by proposing Standard 7-6.6, recognized the impropriety of handing to *349 medical or other persons the ultimate question to be determined by the jury, whether the defendant is entitled to be exculpated because of his .mental processes at the time of the crime charged. The Report of the Standing Committee points out that the issue is jurisprudential, and not medical, and for that reason we should provide an exception to Section 704 of the Montana Rules of Evidence, which allows opinion testimony on the ultimate question in the ordinary case.
In the meantime, I would reverse the conviction of Jerry Korell, and return this cause for a trial on his insanity defense.
MR. JUSTICE SHEA,
dissenting:
I join in the dissent of Justice Sheehy and I also will be filing my own dissent setting forth in more detail my own reasons.